| | |
|---|---|
| In re: | Case No. 21-40083-tjt |
| **Loves Furniture, Inc.** | Chapter 11 |
| Debtor. | Hon. Thomas J. Tucker |

**UNITED STATES TRUSTEE'S OBJECTION TO**
*DEBTOR'S MOTION FOR FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) ASSUME PREPETITION CONSULTING AGREEMENTS; (B) ENTER INTO THE CONSULTING AGREEMENT, (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (III) AUTHORIZING AND APPROVING THE STORE CLOSING PROCEDURES, AND (IV) GRANTING RELATED RELIEF*

Andrew R. Vara, United States Trustee for Regions 3 and 9, through his undersigned counsel, objects to the *Debtor's Motion for Final Order (I) Authorizing the Debtor to (A) Assume Prepetition Consulting Agreements; (B) Enter into the Consulting Agreement; (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to Be Free and Clean of All Liens, Claims, and Encumbrances, (III) Authorizing and Approving he Store Closing Procedures, and (IV) Granting Related Relief* (the "Motion") and in support of his objection respectfully states as follows:

**PRELIMINARY STATEMENT**

The Debtor is conducting a store closing and liquidating sale process, pursuant to which the Debtor seeks approval to enter into a sale promotion consulting agreement (the "Consulting Agreement") with a contractual joint venture of two

liquidating companies (the "Agent" defined more specifically below). The Agent is comprised of Hilco Merchant Resources, LLC and Planned Furniture Promotions, Inc. ("PFP"). The Consulting Agreement contemplates (i) the assumption of certain pre-petition consulting agreements (the "Prepetition Consulting Agreements") between the Debtor and PFP relating some of the Debtor's store locations and (ii) the closing and liquidation of Debtor's remaining store locations. Although executed post-petition, the Consulting Agreement was negotiated prepetition in contemplation of a chapter 11 filing.

Ostensibly executed to foster an efficient and cost-effective sale process, the Consulting Agreement requires the Debtor to essentially relinquish control of its operations to the Agent. Specifically, the Consulting Agreement provides the following:

- o The Agent may use the store locations and all related company services, equipment, fixtures, and other assets of the Debtor to conduct sales free from interference of any entity or person.

- o The Agent may introduce additional inventory to the sales, which will be the exclusive property of the Agent. The Debtor will have no interest in the property and will receive no profit or other benefit from the sale of additional inventory purchases.

- o The Agent will provide its own personnel, including sales staff, clerical and warehouse personnel.

- o The Agent will establish bank accounts controlled exclusively by the Agent. All sale receipts will be deposited into the Agent's accounts and controlled by the Agent.
- o The Agents will be added to Debtor's insurance policies as loss payees.

In addition to granting the Agent exclusive control over the liquidation of the Debtor's stores, the Consulting Agreement grants the Agent liens on the very assets under its charge. A critical component of the Consulting Agreement is a $2.5 million "advance payment" made by the Agent to the Debtor to fund the store liquidation process (the "<u>Advance Payment</u>"), a $200,000 augment fee to fund pre-sale customer orders (the "<u>Augment Fee</u>"), and the granting of senior security interests on substantially all assets of the Debtor and super priority claim status in favor of the Agent. By assuming the PrePetition Consulting Agreements, PFP will maintain its lien for the prepetition advances.

Since the Agent plays two critical roles in this case—that of lender and liquidator, it has tremendous influence over all aspects of the store closings and liquidation, including control over the timing, manner, location and selection of saleable inventory. By assuming multiple roles in the process, the Agent has positioned itself to realize the greatest benefit and is exposed to virtually no risk if the sales go poorly. The dual role played by the Agent in this case disincentivizes the Agent from maximizing the sale of inventory. If inventory that is subject to the Agent's liens doesn't sell, the Agent is protected by its rights as a secured creditor.

Further, the Debtor asks this Court to consider the possibility of the Agent wearing a third hat in the future—buyer. It is a conflict of interest for the Agent to

even open the possibility that it may later act as a buyer of any residual inventory. In such circumstance, the Agent may determine it to be in its financial interest to withhold certain valuable inventory from early liquidation sales in the hope that such assets will be available for it to purchase down the line at a significant discount. Even the possibility of this scenario renders the request untenable.

For the reasons set forth above and discussed in detail below, the protections provided to the Agent under the proposed Final Order serve to benefit only the Agent, completely neutralizing its risk in the event of poor sale results, while those parties with the least control, including the Debtor and other stakeholders, stand to lose the most.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b); 28 U.S.C. § 157(a) and (b)(1); and 28 U.S.C. § 151. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). The United States Trustee has standing to file be heard on the Motion pursuant to 11 U.S.C. §307.

## BACKGROUND

1. The Debtor filed for relief under chapter 11 of the Bankruptcy Code on January 6, 2021.

2. On January 12, 2021, the Debtor filed the Motion. The Motion seeks authority to sell substantially all of the Debtor's assets through store liquidation and store closing sales.

3. On January 15, 2021, the Court entered an *Interim Order (I) Authorizing the Debtor to (A) Assume Prepetition Consulting Agreements; (B) Enter*

*into the Consulting Agreement; (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to Be Free and Clean of All Liens, Claims, and Encumbrances, (III) Authorizing and Approving he Store Closing Procedures, and (IV) Granting Related Relief* ("Interim Order") at Docket #62. The Interim Order allows for parties to object to entry of a final order on the Motion ("Final Order") no later than January 29, 2021.

4. The Motion also seeks final court authority for the Debtor to (1) assume two pre-petition liquidation consulting agreements for the liquidation of all the assets in 13 of its stores, (2) enter into a new liquidation consulting agreement for the liquidation of all the assets in the remaining 12 stores, and (3) approve the store liquidation and store closing process.

5. On December 3, 2020, Debtor entered into two *Sale Promotion and Consulting Agreements*: one between the Debtor, PFP and STORE Capital Acquisitions, LLC, at Docket #33 and one between the Debtor and PFP at Docket # 34.

6. The Motion also requests authority for the Debtor and Agent to enter into a post-petition *Sale Promotion and Consulting Agreement* and is attached as Exhibit 3 to Docket #28.

7. The United States Trustee objects to four specific provisions of the Interim Order.

# OBJECTIONS

### I. *The Agent's may not assume the role of seller and buyer.*

8. Paragraph 41 of the Interim Order allows the Agent to provide additional services to the Debtor and to bid on the sale of Debtor's assets in connection with a future process. This provision is qualified by an obvious and known requirement of bankruptcy procedure - that the Agent may only assume these roles upon entry of a court order. This is a true statement regardless making this paragraph superfluous.

9. Moreover, the Agent, with exclusive rights to conduct the going out of business sales, must not later be permitted to bid on the purchase of residual inventory or any other assets of the Debtor.

10. Allowing the Agent to function as both seller and buyer is an inherent conflict. Such an arrangement gives the appearance of unfair dealing, providing the Agent with incentive to conduct the sales in a manner that most benefits itself.

11. Further, in the event the Debtor requests additional services from the Agent beyond the scope of the Consulting Agreements, that request must be by a separate motion with proper notice and opportunity to object. As such, paragraph 41 is, again, superfluous.

### II. *The Agent's post-petition, all asset lien is overreaching.*

12. Paragraph 11 of the Interim Order grants the Agent "senior security interests in and lien upon…" *all* assets of the Debtor to secure full payment and performance of the obligations of the Debtor under the Consulting Agreement. There are 3 problems with this lien.

13. First, any lien in favor of the Agent, if permitted, should only extend to *post-petition* advances. This paragraph grants a security interest to secure all obligations of the Debtor under the *post-petition agreement*. The liens granted in paragraph 11 may **not** secure any pre-petition obligations of the Debtor to Planned Furniture Promotions, Inc. under the pre-petition consulting agreements.

14. Second, this lien broadly covers not only the post-petition advances made by the Agent for sale expenses, but also extends to secure the payment of its percentage fee for services, and its split of the net sale proceeds. Any security interest granted to the Agent must only secure the payment of the post-petition Advance, Augment Fee, and Sale Expenses. It is not necessary or appropriate for the Agent to have a lien on assets of the Debtor to secure payment of its fees. The Agent fees are based on performance under the Consulting Agreement and should be paid only out of sale proceeds as the Consulting Agreement provides. When inventory is sold, the Agent earns its fee; conversely, if revenue is not generated from inventory sales, the Agent has not earned its fee and may not recover that loss from assets of the estate.

15. Third, the Agent should not be permitted a lien in assets of the Debtor other than Additional Inventory (defined in the Consulting Agreement as inventory purchased by the Agent to augment sales) and post-petition sale proceeds. There is no authority to allow Agent a lien in other assets of the Debtor. Taken to an extreme, if the sales go poorly, the Agent would be entitled to seize any assets of the estate, including the Debtor's customer lists, intellectual property, and fixtures, to the detriment of all other stakeholders, including other administrative claimants. The

Agent should not be allowed an additional source of recovery for its fees after a failed liquidation process.

### III. The Agent's superpriority claim status is overly broad.

16. Paragraph 15 of the Interim Order grants a "superpriority claim status" to the Agent under 11 U.S.C. §364(c) as to the advances and payments, including sale expenses, made by the Agent.

17. The protections afforded a lender under 11 U.S.C. §364(c) only apply to post-petition credit.

18. This superpriority status may only be afforded to obligations under the *post-petition* agreement. For avoidance of doubt, the obligations of the Debtor to Planned Furniture Promotions, Inc., under the pre-petition agreements, are not entitled to superpriority status.

19. Further, the superpriority status must only extend to those specified advances and expenses, not to the Agent's fees or split of the sale proceeds. As explained above, the Agent fees are based on performance under the Consulting Agreement and should be paid only out of sale proceeds as the Consulting Agreement provides. There is no authority to allow the Agent to elevate is claims for fees under Section 506(c).

### IV. The waiver of a future surcharge is not appropriate.

20. Paragraph 39 of the Interim Order provides that "no expenses of administration of this Debtor's chapter 11 case or any future proceeding or case…will be charged against the Agent or the Agent's claims." This is an overly broad and vague premature waiver.

21. According to the Consulting Agreement the Debtor is responsible for the payment of Non-Sale Expenses, which includes expenses of the chapter 11 case, such as professional fees and U.S. Trustee quarterly fees. Paragraph 39 broadly expands the Agent's protections unnecessarily. This paragraph is an attempt to alter the provisions of the Bankruptcy Code; most notably Section 506(c).

**WHEREFORE,** the United States Trustee requests that this Court sustain his objections.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
Regions 3 and 9

By: /s/ Jill M. Gies
Jill M. Gies (P56345)
Kelley Callard (P68537)
Trial Attorneys
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-7999
Jill.Gies@usdoj.gov
Kelley.Callard@usdoj.gov

Dated: January 29, 2021