UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                          Case No. 21-40083

LOVES FURNITURE INC.,                      Chapter 11

                  Debtor.                               Judge Thomas J. Tucker
_____/

**OPINION AND ORDER REGARDING THE MOTION FOR IMMEDIATE AND
ONGOING COMPENSATION, FILED BY LCN AVF WARREN (MI) LLC
AND LCN AVF DEARBORN (MI) LLC**

This case came before the Court for a telephonic hearing on March 24, 2021, regarding the motion entitled "Motion of LCN AVF Warren (MI) LLC and LCN AVF Dearborn (MI) LLC Seeking Entry of an Order Compelling Debtor to Provide Immediate and Ongoing Compensation For Its Use And Occupancy of Certain Leased Premises" (Docket # 165, the "Motion"). The Debtor filed a response objecting to the Motion (Docket # 259), and the Official Committee of Unsecured Creditors (the "Committee") filed a response concurring in the Debtor's response (Docket # 260).

The Court has considered all of the exhibits filed and all of the written and oral arguments of the parties regarding the Motion. The Court now will rule on certain issues, and order further proceedings on the Motion, as described below.

**I. The Lease termination issue**

The first issue is whether there was a pre-petition termination of the four real estate leases covering the six properties that are the subject of the Motion (collectively, the "Leases"). The answer, with respect to all of the Leases, is no. None of the Leases were terminated pre-petition, but rather they remained in effect after the Debtor filed its bankruptcy petition on January 6,

2021, each as an "unexpired lease of the debtor" as that term is used in 11 U.S.C. § 365(a).

The Lessors, LCN AVF Warren (MI) LLC and LCN AVF Dearborn (MI) LLC (collectively, the "LCN Parties"), contend that they terminated all of the Leases effective on January 6, 2021, before the Debtor filed its bankruptcy petition that day. The Debtor filed its bankruptcy petition at 5:17 p.m. Eastern Standard Time, on January 6, 2021.[1]

The LCN Parties allege that the termination of the Leases occurred because the LCN Parties sent a letter (the "Termination Letter"), with respect to each of the Leases, giving notice of termination of each Lease effective on January 6, 2021, that each termination letter was sent by depositing it with Federal Express for overnight delivery to the Debtor, and that the deposit with Federal Express was done on January 6, 2021, at a time that day before the bankruptcy petition was filed at 5:17 p.m. The Court will assume that these facts are true, for purposes of this Opinion and Order.

With respect to each of the Leases, the Termination Letter and the provisions of the Lease relevant to the termination issue are the same. The Court will cite and quote from provisions of the Lease for 6500 East 14 Mile Road, Warren, Michigan, Exhibit 6-A to the Motion (the "Warren Lease"),[2] but all the Leases have the same pertinent provisions.[3]

Paragraph 22(a)(i) of the Warren Lease states, in pertinent part:

> (a) If an Event of Default shall have occurred and be continuing beyond the expiration of any applicable notice and/or cure period,
> . . . .

---

[1] *See* the Court's time stamp at the bottom of each page of the filed petition (Docket # 1).

[2] Docket # 165-6.

[3] *See* Docket ## 165-6, 165-7, 165-8, 165-9.

> (i) Landlord may terminate this Lease by giving Tenant written notice thereof; such termination to be effective as of the date specified in such notice unless a longer notice period is prescribed by applicable Law (in which event, such longer period shall deemed set forth in such notice and shall control). Upon such date, this Lease, the estate hereby granted and all rights of Tenant hereunder shall expire and terminate . . . .[4]

The Termination Letter for the Warren Lease, dated January 6, 2021, stated, in pertinent part, that "Landlord hereby terminates the Lease effective immediately as of January 6, 2021 pursuant to Paragraph 22(a)(i) of the Lease."[5]

Under Paragraph 22(a)(i), the action by the LCN Parties that terminates the Lease is the "giving [the Debtor] written notice" of termination. Paragraph 23 defines when a notice is deemed to have been given. In the case of a notice that is sent by Federal Express, as in this case, the notice is deemed to have been "given" one business day after the notice is deposited with Federal Express. Paragraph 23 states, in pertinent part:

> **All notices**, demands, requests, consents, approvals, offers, statements and other instruments or communications **required or permitted to be given pursuant to the provisions of this Lease** shall be in writing and **shall be deemed to have been given and received for all purposes** (i) when delivered in person or (ii) **one (1) Business Day after deposit with Federal Express** or other reliable 24-hour delivery service, addressed to the other party at the address set forth below.[6]

Because each Termination Letter was deposited with Federal Express on Wednesday, January 6, 2021, the termination notice for each of the Leases is deemed to have been "given" on

---

[4] Docket # 165-6 at pdf pp. 38-39.

[5] Docket # 165-10 at pdf p. 2.

[6] Docket # 165-6 at pdf p. 41 (emphasis added).

3

Thursday, January 7, 2021.[7] This means, in turn, that the LCN Parties must be deemed to have taken the action that terminated each of the Leases — *i.e.*, "giving" the Debtor written notice of termination — on January 7, 2021, the day after the Debtor filed its bankruptcy petition.[8] January 7, 2021 also is the day the Debtor is deemed to have "received" the written notices of termination, and in fact is the earliest date on which the Debtor actually received the written notices of termination, by Federal Express overnight delivery.

The result of this is that the action by the LCN Parties in terminating the Leases must be deemed to have been done on January 7, 2021, after the automatic stay had arisen, and therefore was a violation of the automatic stay. *See* 11 U.S.C. §§ 362(a)(1), 362(a)(3), 362(a)(6). As such, the action of the LCN Parties in terminating each of the Leases is invalid, void, and of no effect. *See Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909, 911-12 (6th Cir. 1993).[9]

Because the Leases were not validly terminated, they remained in effect after the Debtor filed its bankruptcy petition on January 6, 2021, each as an "unexpired lease of the debtor" as that term is used in 11 U.S.C. § 365(a).

## II. The issue of rent for the first quarter of 2021

The second issue is whether either of the LCN Parties is, or both of the LCN Parties are,

---

[7] "Business Day" is defined in the Warren Lease to be "any day other than a Saturday, Sunday or a day on which commercial banks in New York or Michigan are required or authorized to be closed." (Docket # 165-6 at pdf p. 7).

[8] This is so even though each of the termination notices stated that the termination of the Lease was effective January 6, 2021.

[9] *Easley* held that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Id.* at 911. None of the "limited equitable circumstances" described in *Easley* exist in this case.

entitled to an allowed administrative expense, under 11 U.S.C. § 503(b)(1), or entitled to payment from the Debtor under 11 U.S.C. § 365(d)(3), for rent, because of the Debtor's use and occupancy of the leased properties for all or any part of the first quarter of 2021 (January through March, 2021). The answer, as to both of the LCN Parties, and with respect to both § 503(b)(1) and § 365(d)(3), is no.

**A. Section 365(d)(3)**

Section 365(d)(3) provides, in pertinent part:

> The trustee **shall timely perform all the obligations of the debtor**, except those specified in section 365(b)(2), **arising from and after the order for relief under any unexpired lease of nonresidential real property**, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3) (emphasis added).

It is undisputed that under the terms of each of the Leases, the rent for the first quarter of 2021 (January 1, 2021 through March 31, 2021) was due from the Debtor on January 1, 2021. The Debtor is not obligated to pay any rent for any part of this quarter under 11 U.S.C. § 365(d)(3). This is because the Debtor's obligation under the Leases to pay rent for the first quarter of 2021 did not to any extent "arise from and after the order for relief," within the meaning of § 365(d)(3). Rather, that obligation arose entirely before the order for relief (January 6, 2021), *i.e.*, on January 1, 2021.

The LCN Parties argue that if the Court rules that the Leases were not validly terminated pre-petition, as the Court has now ruled, the first quarter 2021 rent should be apportioned, such that the rent for the pre-petition part of the quarter (January 1, 2021 through January 5, 2021) should be deemed a pre-petition debt, and the rent for the post-petition part of the quarter

5

(January 6, 2021 through March 31, 2021) should be deemed to "arise" "from and after the order for relief," under § 365(d)(3). Under this approach, the Debtor would be required to pay rent at the contractual rate, apportioned for the post-petition time period.

The Court disagrees with the LCN Parties on this issue. The Court concludes that the rent for the entire first quarter of 2021 is an obligation that must be deemed to have arisen pre-petition. As a result, the Debtor has no obligation to pay the LCN Parties any rent for that quarter, under § 365(d)(3). This ruling is consistent with the approach taken by the following cases, which the Court finds persuasive and agrees with. *See In re Oreck Corp.*, 506 B.R. 500, 502-06 (Bankr. M.D. Tenn. 2014) (among other things, interpreting and applying *Koenig Sporting Goods, Inc. v. Morse Road Co.* (*In re Koenig Sporting Goods, Inc.*), 203 F.3d 986 (6th Cir. 2000)); *BK Novi Project, L.L.C. v. Stevenson* (*In re Baby N' Kids Bedrooms, Inc.*), No. 07-1606, 2008 WL 9836333 (6th Cir. March 26, 2008); *In re The 1/2 Off Card Shop, Inc.*, No. 00-48425-WS, 2001 WL 1822419 (Bankr. E.D. Mich. March 7, 2001).

**B. Section 503(b)(1)**

Section 503(b)(1) provides, in pertinent part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1) (A) the actual, necessary costs and expenses of preserving the estate . . . .

11 U.S.C. § 503(b)(1)(A).

The Debtor is not obligated to pay any rent for the first quarter of 2021 as an allowed administrative expense, under 11 U.S.C. § 503(b)(1). This is because the Debtor's entire rent

6

obligation for this quarter, under each of the unexpired Leases, arose in its entirety on January 1, 2021, before the Debtor filed its bankruptcy petition on January 6, 2021. Because of this, the entire rent obligation is deemed to be a pre-petition claim, and no administrative expense can be allowed for any such rent. *See Baby N' Kids Bedrooms, Inc.*, 2008 WL 9836333, at *2 (holding, among other things, that "[o]nly post-petition debts, however, can be treated as administrative expenses [under § 503(b)(1)]; *pre-petition* debts may not be granted administrative-expense priority.") (italics in orignal); *Oreck Corp.*, 506 B.R. at 506-09; *The 1/2 Off Card Shop, Inc.*, 2001 WL 1822419, at *1-3.[10]

### III. The real property tax issue

The third issue is whether either of the LCN parties is, or both LCN Parties are, entitled to an allowed administrative expense, under 11 U.S.C. § 503(b)(1), or entitled to payment from the Debtor under 11 U.S.C. § 365(d)(3), because of the Debtor's obligation under the Leases to pay real property taxes, for the Winter taxes. As used in this Opinion and Order, the phrase "Winter taxes" means the real property taxes that under applicable Michigan law must be paid no later than February 14, 2021 in order to avoid penalties and interest.

This issue was not discussed or briefed by the parties in any of their written papers. Rather, it was argued for the first time during the March 24, 2021 hearing on the Motion. The Court concludes that this issue is sufficiently complex that, before the Court rules on the issue,

---

[10] The LCN Parties cite, in support of their position, the following two cases from bankruptcy courts in Michigan: *In re Palace Quality Servs. Indus., Inc.*, 283 B.R. 868 (Bankr. W.D. Mich. 2002) (applying former Bankruptcy Code § 362(d)(10)); *In re VPH Pharmacy, Inc.*, No. 17-30077-dof, 2017 Bankr. LEXIS 3501 (Bankr. E.D. Mich. Sept. 8, 2017). It is not clear that these cases are inconsistent with this Court's decision in this case, but if and to the extent they are, the Court respectfully disagrees with them.

the Court should permit the parties to present their facts and arguments, and any further exhibits, in writing, after which the Court will hold a further hearing.

**IV. Conclusion and Order**

For the reasons stated above, the Court enters the following Order.

IT IS ORDERED that:

1. The Motion (Docket # 165) is denied in part, as stated in this Order, below, and otherwise is scheduled for further proceedings, as described below.

2. To the extent the Motion seeks an order compelling the Debtor to pay the LCN Parties, or an order giving the LCN Parties an allowed administrative expense for, any rent for the Debtor's use and occupancy of the real property under any of the Leases, for any of the time period January 1, 2021 through March 31, 2021, the Motion is denied.

3. To the extent the Motion seeks an order compelling the Debtor to pay, or an order giving the LCN Parties an allowed administrative expense for, the Winter taxes, the Court orders further proceedings, as follows:

   a. No later than April 14, 2021, the LCN Parties must file, as a supplement to the Motion, a brief and all exhibits that the LCN Parties wish the Court to consider, regarding the Winter taxes issue.

   b. No later than April 28, 2021, the Debtor must, and the Committee may, file, as a supplement to their responses to the Motion, a brief and all exhibits that they wish the Court to consider, regarding the Winter taxes issue.

   c. The Court will hold a further hearing on this unresolved portion of the Motion on **May 5, 2021 at 11:00 a.m.** This hearing will be held by telephone, in the same way the March 24,

21-40083-tjt    Doc 343    Filed 03/31/21    Entered 03/31/21 16:42:49    Page 8 of 9

2021 hearing was held by telephone.

**Signed on March 31, 2021**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker
United States Bankruptcy Judge**